[Civ. No. 1828. Third Appellate District.—July 23, 1919.]

## C. L. SCHAAD, Respondent, v. H. J. BARCELOUX, Appellant.

[1] PLEADING—FILING OF AMENDED COMPLAINT—LEAVE OF COURT—APPEAL—RECORD—PRESUMPTION.—Where the amended complaint contained in the record on appeal recites that it was filed after leave of court first had and obtained, and there is nothing in the record to show the contrary, it must be presumed in favor of the order of the trial court overruling a motion to strike such amended complaint from the files on the ground that leave of court was not obtained, that it was justified by the facts.

[2] ID. — CHANGE OF CAUSE OF ACTION — DIFFERENT REMEDY. — In an action by the owner of corporate stock which had been delivered to the defendant as trustee under a pooling agreement, the cause of action set forth in the original complaint seeking to recover the value of the shares which it is alleged the defendant received and converted to his own use is not changed, but only the remedy, by the filing of an amended complaint wherein the plaintiff seeks to recover the shares or their value.

[3] APPEAL — ALTERNATIVE REMEDY — BRIEFS. — Where an appeal is taken under the alternative method, both parties must print in their briefs, or in a supplement thereto, such portions of the record as they desire to call to the attention of the court. It is not sufficient to call attention to certain folios of the transcript.

42 Cal. App.—22

[4] ID. — DENIAL OF NONSUIT — SUBSEQUENT INTRODUCTION OF EVI-
DENCE—VERDICT—ERROR CURED.—If the court through error denies
a motion for a nonsuit and thereafter the defendant takes up the
matter of its defense and introduces evidence, oral and documen-
tary, upon the merits of the case, which is followed by other evi-
dence of like character introduced by the plaintiff, and the general
verdict or special findings of the jury are not attacked, this must
be taken as a concession that the evidence subsequently admitted
supplied the deficiency.

[5] CORPORATIONS — POOLING AGREEMENT — CONVERSION OF STOCK BY
TRUSTEE—ACTION TO RECOVER STOCK OR ITS VALUE.—Where cor-
porate stock was delivered to a trustee under a pooling agree-
ment for a given term of years and he converted the same
to his own use, and thereafter, but prior to the expiration
of such term, the property of the corporation was sold to an-
other corporation and the proper proportionate share of the
proceeds distributed to such trustee, the bringing of an action
against him to recover the shares of stock or their value con-
stituted neither a violation of the pooling agreement nor a pro-
ceeding to compel the distribution of the assets of the corporation
before its dissolution or the winding up of its affairs, contrary to
the provisions of section 309 of the Civil Code, such trustee hav-
ing attempted to justify his conduct by the contention that the
plaintiff did not own such stock, but that it was owned by a third
person to whom it had been delivered.

[6] ID. — EVIDENCE — STATEMENTS BY THIRD PARTY ADMISSIBLE. — In
such action the court properly permitted plaintiff's witnesses to
testify to certain declarations made by such third person, not in
the presence of the defendant, to prove plaintiff's ownership of
the stock and to rebut the claim that such third person was the
owner thereof.

APPEAL from a judgment of the Superior Court of Glenn
County.   Wm. M. Finch, Judge.   Affirmed.

The facts are stated in the opinion of the court.

C. L. Donohoe and W. T. Belieu for Appellant.

Frank Freeman and George R. Freeman for Respondent.

CHIPMAN, P. J.—The original complaint in the action
had for its object to recover the value of certain five thou-

_____

5. Validity of agreement to control the voting power of corporate
stock, notes, 56 Am. St. Rep. 140; 15 L. R. A. 683; 16 L. R. A.
(N. S.) 1136; 31 L. R. A. (N. S.) 1186.

sand shares of the capital stock of the Glenn County Telephone Company, evidenced by certificate No. 12, of which plaintiff claimed to be the owner on March 14, 1908. Subsequently to the filing of the original complaint, plaintiff filed an amended complaint alleging that defendant had converted said shares, and praying for the judgment of the court that said shares be returned to plaintiff or that defendant pay the value thereof. Defendant filed a motion to strike out portions of the first amended complaint for the following reasons: "1. That no order was had or obtained for the filing of said first amended complaint; or if an order was had or obtained for the filing of said amended complaint, the same was not filed within the time allowed by law or by the court; 2. That said amended complaint changes the original cause of action, from an action in contract to an action in tort, and that said first amended complaint is not germane to the issues as framed by the original pleadings, and introduces a different cause of action."

It was alleged in the original complaint that on March 14, 1908, plaintiff deposited a certain certificate No. 12 with defendant as a trustee under the terms of a certain pooling agreement, a copy of which is attached to the complaint and made a part hereof; that this pooling agreement provided that the stock so deposited with defendant was to be pooled for ten years from that day for the purposes set forth in said agreement; that said pooling agreement was entered into between plaintiff and defendant and several other stockholders of said company on March 14, 1908, and, among other things, provided that the signers of said agreement represented fifty-one per cent of the capital stock of said company, and they agreed that the stock should be vested in a trustee for their benefit for ten years after the incorporation of said company, the said shares to be voted in a body for any and all purposes during that period, and that the votes to be cast, whether for directors or any other purpose, should be cast as a whole, agreeable to the direction or control of a majority of the fifty-one per cent of said stock; that each of the signers was the owner of a specified number of shares, of which the agreement showed that plaintiff owned five thousand shares; that defendant owned twelve thousand shares and that pursuant to, and to attain the purposes mentioned therein, the certificates of stock belonging to the signers

should be placed in the physical possession of defendant, to be held by him during that period; that said certificates of stock, representing fifty-one per cent, which had been, or might be, issued to the signers should bear the indorsement showing that it was subject to said pooling agreement; that during the time covered by the agreement no part of the stock should be sold or transferred except by consent of a majority of the owners, and that defendant accepted such trusteeship and agreed to, and did, accept physical possession of said certificate subject to the terms of said pool agreement.

It is further alleged in the complaint that in December, 1915, the franchise and property of said company were sold for eighty-three thousand dollars, the company receiving that amount on account of such sale; that deducting the indebtedness of the company there remained the balance of fifty-one thousand five hundred dollars, to be divided among the one hundred thousand shares of stock of said company then outstanding; that defendant received from the corporation all moneys due the plaintiff from said incorporation on account of his said five thousand shares of stock, amounting to three thousand dollars, and before the commencement of this action plaintiff demanded the same of defendant, and that defendant refused, and still refuses, to account to plaintiff therefor, or for any sum of money due him, as owner of the said stock; that defendant has converted the money to his own use; that the owners of said stock received from the said sale $.60 per share, as their proportion of the proceeds thereof.

The complaint also sets forth a second cause of action in the form of a common count for money had and received by defendant for and on account of plaintiff, and for the use of plaintiff, in the sum of three thousand dollars, and it was alleged that defendant became indebted to plaintiff for that sum, and though often requested to pay the same, had failed at all times to do so.

The original complaint was filed on or about May 8, 1916. Defendant demurred thereto, which being overruled, he filed his answer to the complaint on July 10, 1916. In his answer he denied plaintiff's ownership of said certificate of said shares, evidenced by said certificate No. 12, but admitted that on March 14, 1908, plaintiff deposited said

shares with defendant, as trustee, under the terms of said pool agreement, and admitted that ever since he has retained the possession thereof, subject to conditions as later in the answer alleged, and admitted that said indorsement and delivery of said stock to defendant was for the purpose set out in said pool agreement; admitted that during the month of December, 1915, the franchise and property of the said company was sold to the Sacramento Valley Telephone Company, and alleged that the sum of $40,311.40 and ten thousand dollars in bonds remained to be divided among the stockholders, after deducting the indebtedness of said company; denied that defendant received from said company any money alleged to be due plaintiff from said company on account of the alleged ownership of said five thousand shares, and denied that he received any money on behalf of plaintiff on account of or by virtue of the alleged possession of any stock of said company.

Admits that prior to the commencement of said action plaintiff demanded of defendant all moneys received by him on account of the said shares, and admits that defendant refused, and now refuses, to account to plaintiff for the sum or any sum of money on account of said shares, and denies that plaintiff herein has converted said shares, or anything of value, to his own use to the detriment of plaintiff herein; denies that all of the owners of the shares of stock of said company received $.60 per share, but alleges that some received that amount, others received $.50 per share, and still others received bonds in lieu of their said stock; denied that the value of said alleged five-thousand shares of stock was of the value of three thousand dollars.

Further answering the said complaint the defendant denies that he had received for, or on account of, plaintiff the sum of three thousand dollars, or any other sum; denies that he is indebted to plaintiff in said sum or any sum whatever; admits demand and refusal as alleged in the complaint.

For a further and separate defense, defendant alleges that on or about the month of March, 1908, one A. S. Lindstrom was the owner and in possession of fifty-one thousand five hundred shares of the capital stock of said company, and at that time said Lindstrom had a contract with the said Glenn County Telephone Company by which he was ob-

ligated to pay certain expenses connected with the organization of the said Glenn County Telephone Company; that on or about the month of March, 1910, said Lindstrom contracted and agreed to and with the plaintiff herein that if the said plaintiff "would pay and defray one-fifth of said organization and promotion expenses of said Glenn County Telephone Company, a corporation, that he, the said A. S. Lindstrom, would convey to the said plaintiff, C. L. Schaad, and cause to be transferred to him on the books of said corporation, five thousand shares of the capital stock of said corporation, Glenn County Telephone Company, to be and remain the sole and exclusive property of the said C. L. Schaad, as soon as and when the said C. L. Schaad should pay his one-fifth of the expenses of the organization and promotion of said corporation"; that, plaintiff agreed thereto and that in consideration of said shares he would pay and defray one-fifth of the said expenses; that thereafter, and in pursuance of said agreement, said Lindstrom did convey to plaintiff and cause to be transferred on the books of said corporation, subject to the conditions above specified, five thousand shares of the capital stock of said company and had issued to him certificate No. 12, evidencing said shares.

The answer then alleges the termination of said pooling agreement referred to in the said complaint, by the terms of which the defendant herein was made a trustee of all the parties thereto, and that at said time plaintiff indorsed to defendant and delivered to him as such trustee and as part of said pooling agreement said certificate No. 12; that by the terms of said agreement between said Lindstrom and said plaintiff the title and ownership of said five thousand shares and said certificate No. 12 were to remain in and be the property of said Lindstrom until the plaintiff had fully paid his part of said expenses; that thereafter there became due and payable on account of the expenses of the organization of said company the sum of $—— from said Lindstrom and that thereafter, on or about the —— day of March, 1909, said Lindstrom demanded of plaintiff herein that he pay to said Lindstrom his said one-fifth of said expenses, but plaintiff refused, and ever since has refused, so to do; that thereafter, in the month of September, 1909, the said Lindstrom notified plaintiff that on account of his failure and refusal to defray his part of said expenses that he, the said Lindstrom, rescinded the

said agreement and demanded a redelivery to him of said certificate No. 12, and that said plaintiff failed and refused so to do, or to authorize the defendant herein to redeliver the said certificate to the said Lindstrom; that in the month of April, 1910, said Lindstrom demanded of said defendant herein the redelivery to him of the said certificate No. 12, held in the name of plaintiff, as aforesaid, on account of the failure of plaintiff to comply with the terms of his agreement, and to withdraw said certificate from said pooling agreement and that said certificate be canceled.

That thereafter said certificate of stock was withdrawn from said pooling agreement and redelivered to said Lindstrom and was canceled on the books of said corporation, and the certificate issued to said Lindstrom in lieu thereof, and the same was thereafter delivered by said Lindstrom to said defendant herein and again placed in said pooling agreement; that said defendant now holds said certificate as trustee under the terms of said pooling agreement, and ever since the said month of April, 1910, said Lindstrom has been the owner, and now is the owner, of said certificate, "and ever since the said time the plaintiff has had no interest in or to said certificate of stock in any manner whatever or at all"; that by reason of the plaintiff's refusal to comply with the terms of his said contract with said Lindstrom in not making the payments connected with the organization expenses of said company, the said plaintiff never became the owner of said stock or entitled to any of the proceeds arising therefrom.

On September 5, 1916, defendant filed an amended answer, substantially the same as before, but, in addition thereto, pleaded the statute of limitations; on March 26, 1917, plaintiff filed an amended complaint on which the action was tried. It was alleged in the amended complaint that plaintiff is the owner of five thousand shares of the capital stock of the Glenn County Telephone Company, evidenced by certificate No. 12 of said corporation, and that on that day he deposited the said certificate with defendant as aforesaid, under the terms of a certain pooling agreement, "a copy of which is attached to the original complaint marked 'Exhibit A,' and made a part thereof, and by reference said 'Exhibit A' is hereby made a part of this first amended complaint"; alleges the sale of the prop-

erty and franchise of said company, in December, 1915, and "that the purposes of said trust ceased and said trust was extinguished, and that defendant converted said five thousand shares of the capital stock of said corporation to his own use, and at that time claimed and asserted, and now claims and asserts, that plaintiff has no interest or ownership in or to said five thousand (5,000) shares of stock, and then repudiated and now repudiates his trust in connection therewith"; alleges the value of said stock to be the sum of three thousand five hundred dollars, and prays judgment for the return of said shares or the sum of three thousand five hundred dollars, the value thereof, with interest thereon from December 15, 1915.

On April 2, 1917, defendant filed a motion to strike out portions of the amended complaint on the grounds heretofore stated, which motion being denied, the defendant answered plaintiff's amended complaint, in which he denied plaintiff's alleged ownership of said shares of said corporation, admitted that on the fourteenth day of March, 1908, he deposited said certificate with defendant, as trustee under the terms of said pooling agreement; admitted that during the month of December, 1915, the franchise and property of said company were sold to the Sacramento Valley Telephone Company, but denied that the purposes of the trust under the said pooling agreement "then or ever ceased or was ever extinguished"; denied that defendant converted said five thousand shares to his own use or at all; denied that he had ever asserted that plaintiff has no interest or ownership in said shares except as herein and hereinafter set out and described; denied that defendant at any time repudiated or repudiates his trust in connection with said five thousand shares of stock, and alleges the fact to be that said trust is now in full force and effect; denies that said shares were of the value of three thousand five hundred dollars, or any greater sum than the sum of $——; alleges that in April, 1910, he delivered said certificate of stock to one A. S. Lindstrom, and that ever since said time said defendant has not had in his possession or under his control said certificate No. 12.

For a further defense, defendant set up particularly all the facts stated in his answer to the original complaint and the amendments thereto.

Defendant, also, on September 11, 1917, filed what purports to be an amended answer to plaintiff's amended complaint; the pleadings are verified. The cause was tried by the court with a jury and a verdict was rendered on September 28, 1917, in which the jury found "in favor of the plaintiff for a return of the certificate of stock, being Certificate No. 12 for five thousand (5,000) shares of the capital stock of the Glenn County Telephone Company, a corporation, being the same certificate of stock referred to in plaintiff's complaint herein, or for the value thereof in case a return cannot be had, to wit, the sum of $1,816.60 and interest, from Dec. 1st, 1915."

Certain particular questions of facts were submitted to the jury and answered as follows:

"1. At the time of the delivery of certificate No. 12 for five thousand shares of the capital stock of the Glenn County Telephone Company to the plaintiff C. L. Schaad, was it understood and agreed between A. S. Lindstrom and the plaintiff that the title to said stock was not to pass to the plaintiff until he paid to Lindstrom one-fifth of the moneys expended by Lindstrom in connection with the promotion and organization of the said telephone company? Answer. No.

"2. When did the defendant Barceloux deliver said certificate No. 12 to A. S. Lindstrom? Answer. April 6, 1910.

"3. Did the plaintiff Schaad consent to the delivery of said certificate No. 12 by the defendant Barceloux to said Lindstrom? Answer. No.

"4. When did plaintiff Schaad first learn that the defendant Barceloux had delivered said certificate No. 12 to Lindstrom? Answer. Latter part of 1915."

Judgment passed for the plaintiff in accordance with said verdict. Defendant moved for a new trial, and his motion being denied, appealed from the judgment, and has brought up the record under the alternative plan, pursuant to section 953a, etc., of the Code of Civil Procedure.

[1] 1. As to plaintiff's alleged ground for his motion to strike out the amended complaint: The record shows nothing in relation thereto except the recital in the amended complaint, the motion to strike out, and the order overruling the motion. The amended complaint reads: "Now comes the plaintiff and leave of court having been first had and

obtained, files this his amended complaint.'' Appellant claims that the amended complaint was filed ''as of course'' under section 472 of the Code of Civil Procedure. It does not so purport to be. On the contrary, it purports to have been filed by leave of the court ''having been first had and obtained.'' This recital not only negatives the inference that the pleading was filed ''as of course'' under leave given by section 472, but shows on its face that it was filed after leave given by the court. The order overruling the motion must be presumed to have been justified by the facts in the absence of anything in the record to the contrary. If at the hearing of the motion it was made to appear, as defendant now claims was the fact, some memorial to that effect should have found its way in the bill of exceptions. Otherwise, the regularity of the proceedings will be presumed.

[2] 2. By plaintiff's amended complaint, was ''an entirely new and different cause of action introduced into the case,'' as claimed by defendant? Substantially the facts constituting the cause of action set forth in the original complaint also constitute the cause of action set forth in the amended complaint. In the original complaint plaintiff alleged ownership of certain shares of the Glenn County Telephone Company, which plaintiff delivered to defendant as trustee under the alleged pooling agreement; that subsequently the company sold all its property and franchise to the Sacramento Valley Telephone Company, thus realizing a certain sum of money of which defendant received a certain portion on account of said shares so held by him as trustee; that defendant demanded the money so received by him, ''but that defendant refused, and now refuses, to account to plaintiff for said sum or any sum received from the sale of said property and due to the plaintiff as the owner of five thousand shares of said capital stock, and said defendant has converted said sum and all of them to his own use.''

In his amended complaint plaintiff alleges his ownership of these same five thousand shares in said telephone company, evidenced by certificate No. 12; that plaintiff delivered said certificate to defendant under said pooling agreement made part of both the original and amended complaint; that the franchise and property of said tele-

phone company were sold and the purposes of said trust ceased and said trust was extinguished, and "that defendant converted said five thousand shares to his own use and claimed and now claims that plaintiff has no interest in said shares, and that defendant 'then repudiated and now repudiates his trust in connection therewith'; alleged the value of said shares and prayed for judgment for their return or the value thereof."

As to the two pleadings, the identity of the facts constituting the cause of action is plainly perceivable. In the original complaint plaintiff sought to recover the value of the shares which it was alleged defendant received and converted to his own use. In the amended complaint he sought to recover the shares or their value. Technically the amended complaint might be said to "sound in tort," but in reality the amended complaint sets forth the defendant's obligation, as did the original complaint, and the obligation was the cause of action in both pleadings.

The cause of action was not changed by the amendment, but only the remedy was changed. Mr. Pomeroy points out the difficulty in framing a complaint under reformed pleadings in actions for conversion of chattels, and the like wrongs, that will show on its face that the plaintiff has elected to bring his action either in tort or in contract. "The very facts which are alleged in the action of tort are the facts from which the promise is inferred, and according to the true theory of pleading these facts must be stated in the action *ex contractu*, without any legal inferences or conclusions. It conclusively follows that, in this general class of liabilities, as the facts which constitute the cause of action are the same in each, the averments of the complaint or petition must be the same in each kind of action, if the essential principles of the reformed system are complied with, so that it is impossible to indicate upon the face of the pleading alone the election which the plaintiff has made." (Pomeroy's Code Remedies, 4th ed., sec. 464.) In whatever class the original complaint may be placed, whether *ex contractu* or *ex delicto*, if, as we think is true, the amended complaint, in its material elements, is the same as the original complaint, no new cause of action is pleaded therein. Not only does this similarity of facts exist, but the same evidence would be admissible in support

of both the original and amended complaints. *Frost* v. *Witter*, 132 Cal. 421, [84 Am. St. Rep. 53, 64 Pac. 705], is an instructive case as showing that where the cause of action set up in the original and amended complaint was simply the obligation sought to be enforced, an amendment may be made which merely changes the remedy. As stated in a syllabus, it was there held that, "all that can be required is, that a wholly different cause of action, which is entirely foreign to the original cause of action, cannot be introduced, and that the plaintiff cannot be allowed to strike out the entire substance and prayer of his complaint, and insert a new cause by way of amendment."

The supreme court in *Glougie* v. *Glougie*, 174 Cal. 126, [162 Pac. 118], had the question before it. In considering the original and amended complaint the court said that: "In both cases the fundamental equitable consideration was the same, namely, Was there a breach of trust by virtue of which the defendants were inequitably retaining possession of property rightfully belonging to plaintiff?" In *Born* v. *Castle*, 22 Cal. App. 282, [134 Pac. 347], *Frost* v. *Witter, supra,* is cited and the rule stated in 1 Ency. of Pl. & Pr. 564, as approved: "As long as the plaintiff adheres to the contract or injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action. The test is whether the proposed amendment is a different matter—another subject of controversy—or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony."

[3] 3. At the close of the evidence submitted by plaintiff a motion for nonsuit was made by defendant and denied by the court. This evidence is found in the first seventeen typewritten pages of the reporter's transcript. The grounds of the motion are that the evidence was insufficient to sustain the issues in several particulars pointed out in the motion. The supreme court and the several district courts of appeal have many times called attention to section 953c of the Code of Civil Procedure, which reads: "In filing briefs on said appeal [taken under the alternative method] the parties [not one, but both] must, however, print in their briefs, or in a supplement appended thereto, such portions

of the record as they desire to call to the attention of the court." Utter disregard of this provision by attorneys in presenting their briefs has led the appellate courts to warn attorneys that the law must be obeyed if they expect to avoid the consequences that may follow their dereliction. In *Miller* v. *Oliver*, 174 Cal. 404, [163 Pac. 357], where the appellant, after his attention was called to the matter, failed to print any part of the record in his brief, the court said: "In the face of this contumacy, the court would be justified in affirming the judgment without further consideration."

In *Barker Bros.* v. *Joos*, 36 Cal. App. 311, [171 Pac. 1085], no portions of the record were printed in appellant's brief, reference being made to pages of the typewritten transcript only. Said the court: "It has been repeatedly held that appellate courts will not look into the typewritten transcripts filed under the alternative method of appeal for the purpose of determining whether grounds exist for the reversal of the judgment appealed from." (Citing twelve different cases, to which others, subsequently decided, may be added.) Attorney for appellant calls attention to certain folios of the transcript as showing the evidence upon which the objection was considered and refers to certain exhibits to be found at certain folios. Attorneys for respondent do no more.

[4] 4. Inasmuch as plaintiff's *prima facie* case is made in a few pages, we have read this part of the record, and, while some facts might have been brought out more clearly, we think enough appeared which, with the admissions in the pleadings, justified the court in denying the motion. But if the court erred, the order will not be disturbed in view of the fact that defendant then took up the matter of his defense and introduced evidence, oral and documentary, upon the merits of the case, which was followed by further evidence of like character introduced by plaintiff, the record comprising nearly five hundred typewritten pages. (*Van Horn* v. *Pacific Refining etc. Co.*, 27 Cal. App. 105, 110, [148 Pac. 951], and cases cited.)

It was upon this evidence that the jury rendered a general verdict in favor of plaintiff and also made answer to the special questions submitted to them. Appellant has not attacked the general verdict or special findings of fact.

This must be taken as a concession that the evidence supplied any deficiency existing when the motion for nonsuit was made. If the sufficiency of the evidence to sustain the verdict were challenged, we would feel at liberty to affirm the judgment for the failure of the parties in dealing with the evidence to comply with the statute already pointed out.

[5] It was urged in support of the motion for nonsuit that the stock in question was part of the assets of the corporation and that in seeking to have it returned, or its value, plaintiff not only sought to have defendant violate the pooling agreement, but also sought to compel him to distribute the assets of the corporation before its dissolution or the winding up of its affairs, contrary to the provisions of section 309 of the Civil Code, citing *Kohl* v. *Lilienthal*, 81 Cal. 378, [6 L. R. A. 520, 20 Pac. 401, 22 Pac. 689], and *Tapscott* v. *Mexican Colo. etc. Co.*, 153 Cal. 664, [96 Pac. 271]. It will be recalled that defendant's special defense was that this stock belonged to Lindstrom, who had agreed to sell it to plaintiff conditionally, and that the conditions having been broken, it never became plaintiff's. There was evidence that this defense was unfounded and that the stock was delivered to plaintiff by Lindstrom (the promoter of the company) in consideration of services rendered and to be rendered by plaintiff in connection with the enterprise; that it was placed in the pool in plaintiff's name, the agreement reciting that it belonged to him, and this agreement was signed by Lindstrom and by defendant, among other stockholders; that without plaintiff's knowledge or consent defendant surrendered the certificate evidencing these shares to Lindstrom under circumstances tending to show that defendant was acting in collusion with Lindstrom to deprive plaintiff of any benefit arising from his ownership, and that defendant took part in causing the certificate to be canceled and reissued to Lindstrom and placed back in defendant's possession as Lindstrom's; that defendant denied plaintiff's ownership of the stock or that he had any right to share as such in the proceeds of the sale of the company's property or otherwise to participate in any benefits as a stockholder. Defendant was guilty of a gross violation of his trust, and by thus surrendering the certificate to Lindstrom for the purpose of having it canceled and re-

issued to Lindstrom, defendant was guilty of conversion and became answerable to plaintiff for its return or the value thereof. We can see no necessary connection of defendant's liability to plaintiff with the sale of the company's property. If that sale was invalid and the distributees of the proceeds of the sale should be compelled to restore the money to the company's treasury, defendant must look to Lindstrom, in whose name this certificate now stands, for protection. Plaintiff calls attention to section 1825 of the Civil Code, which requires a bailee to give prompt notice to the bailor "of any proceedings taken adversely to his interest in the thing deposited, which may tend to excuse the depositary from delivering the thing to him"; and, also, to the rule that a bailee in an action brought against him by the bailor cannot set up the title of a third person except by the authorization of that person. (Citing several cases.) It is pointed out that defendant surrendered the certificate to Lindstrom, of which fact plaintiff knew nothing until long after defendant had received it back as issued to Lindstrom.

Attention is also called to the fact that in his answer the defense is confined to the statement that no notice was given to plaintiff of the delivery of the certificate to Lindstrom or of Lindstrom's claim to it until after the delivery had been made; and it is claimed that the answer is wholly inadequate in view of the provisions of the Civil Code, sections 1822-1826.

[6] 5. There remains but one other point made in defendant's brief, namely, that the court erred in admitting certain testimony. In support of Lindstrom's claim of ownership of the shares in question he testified that the sale to plaintiff was conditional and on the terms stated in his answer. Certain witnesses were called by plaintiff and over objection were permitted to testify to certain declarations made by Lindstrom to plaintiff not in the presence of defendant, tending to dispute the claim of ownership. These statements were made while the Glenn County Telephone Company was in process of organization and were admitted for the twofold purpose: first, in rebuttal of Lindstrom's testimony, and, second, as corroboration of the fact, directly testified to by plaintiff, that Lindstrom was to and did deliver to plaintiff the shares in question

for plaintiff's services in organizing the company and subsequently to be rendered thereto. The character of this testimony may be judged from the following answer of one witness, who was asked to state what had been said to plaintiff by Lindstrom about the stock: "He told him that they wanted him in the Glenn County Company; that they desired to have him very much; that he was a large stockholder there in the Colusa County Company and it would assist him a great deal in having him in this company; that they wanted him and he also told him that he would be in the division of the promotion stock if he came in." There was testimony that subsequently Lindstrom caused five thousand shares to be issued to plaintiff in consideration of his influence and services in effectuating the organization of the company. These declarations were made before defendant had anything to do with the shares and at a time when the acts or declarations of Lindstrom did not concern him. They related wholly to plaintiff and Lindstrom and to the effort the latter was making to induce plaintiff to interest himself in the proposed company. They may properly be classed as part of the *res gestae.* There was direct and positive testimony that the shares were delivered to plaintiff in consideration of his services rendered and to be rendered, and whatever view may be taken of these so-called declarations they were not prejudicial.

Our conclusion is that the judgment should be affirmed, and it is so ordered.

Hart, J., and Burnett, J., concurred.