[S. F. No. 11641.  In Bank.—October 31, 1927.]

HENRY WARFIELD, Suing as a Taxpayer of the City and County of San Francisco, Appellant, v. ANGLO & LONDON PARIS NATIONAL BANK et al., Respondents.

[1] JUDICIAL NOTICE—MUNICIPAL SECURITIES—MARKETABILITY OF.— Courts may take judicial notice that municipal securities during and after the World War could not be marketed in large quantities at par unless the usual interest rate thereon was considerably increased.

[2] MUNICIPAL CORPORATIONS—SALE OF SECURITIES—ACTION TO RECOVER DIFFERENCE BETWEEN PAR VALUE AND SALE PRICE—LACHES. An action by a taxpayer to recover on behalf of a municipality

---

1.  Judicial notice, notes, 89 Am. Dec. 663; 24 Am. St. Rep. 22. See, also, 10 Cal. Jur. 732; 15 R. C. L. 1123.

2.  When equity will refuse relief because of laches, notes, 54 Am. Dec. 130; 2 Am. St. Rep. 795; 23 Am. St. Rep. 148.  See, also, 10 R. C. L. 400.

the difference between the par value and the sale price of securities of the municipality sold at public sale is barred by laches where the action was not brought until three years after the sale, during which time all of the facts alleged in the complaint were matters of common knowledge and the city authorities, as well as the taxpayers in general, including plaintiff, acquiesced in the transaction, it being obvious that the position of the purchasers of the bonds had been altered during the period of delay and that if the transaction had been attacked with reasonable promptness and diligence the bonds might have been returned and the purchase price thereof invested in other bonds which were at that time also greatly depressed in value and which would have appreciated with the rising market as did the bonds which were purchased from the municipality, and it further appearing that the municipality had been receiving the benefit of the purchase price of the bonds and of the increased value of United States bonds taken as a part of such purchase price.

[3] ID.—SUIT BY TAXPAYER—RIGHT OF.—A taxpayer can assert no better cause of action on behalf of a municipality than the corporation could have asserted upon its own behalf.

[4] ID.—INEXCUSABLE DELAY IN ACTION—CHANGES OF POSITIONS OF PARTIES.—If, in the course of an inexcusable delay in the assertion of a right, changes occur in the subject matter of the transaction in suit or in the relative positions of the parties thereto, as a result of which it is impossible to place the parties *in statu quo*, and the enforcement of the right would work inequity, relief will be denied because of laches; and a marked appreciation or depreciation, according to circumstances, in the value of the property involved, where the right might have been asserted before such change, and the granting of relief would in consequence of the change work inequity, is ordinarily fatal to plaintiff's case; and if the property involved is of a speculative or fluctuating character, more than ordinary promptness is required of a claimant.

[5] ID.—DOCTRINE OF CLEAN HANDS—LACK OF BAD FAITH OR FRAUD.— In such a case, the contention that the defendants are precluded by their conduct from raising the defense of laches because they do not come into court with clean hands cannot be maintained where there is no allegation of bad faith or fraud, but, on the contrary, facts are alleged from which it appears that both parties to the sale acted in good faith, in view of the conditions existing at the time.

---

4.   See 10 Cal. Jur. 530, 531.

[6] ID.—DEFENSE OF LACHES—RAISING BY DEMURRER.—The defense of laches in such a case is properly raised by demurrer to the complaint.

[7] ID.—LACHES—STATUTE OF LIMITATIONS.—The application of the doctrine of laches is not dependent upon a delay of sufficient duration to call into operation the statute of limitations.

(1) 23 C. J., p. 119, n. 44.   (2) 44 C. J., p. 1420, n. 38.   (3) 44 C. J., p. 1383, n. 26.   (4) 21 C. J., p. 225, n. 43, p. 231, n. 84, p. 233, n. 93; 44 C. J., p. 1422, n. 75.   (5) 21 C. J., p. 190, n. 75. (6) 21 C. J., p. 257, n. 6, p. 435, n. 67.   (7) 21 C. J., p. 256, n. 1.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Hutton for Appellant.

McKinstry, Haber & Firebaugh for Respondent Anglo & London Paris National Bank.

William F. Humphrey and Robert Mack Light for Respondent Construction Company of North America.

Robert M. Searls, Special Counsel, and George Lull, City Attorney of San Francisco, for Respondent City and County of San Francisco.

LANGDON, J.—This is an action brought by a taxpayer of the city and county of San Francisco, on behalf of said municipal corporation, to compel the defendants, other than the municipal corporation, to pay into the treasury of the municipality $2,888,537 because of their purchase from the city and county of San Francisco of certain bonds known as "water bonds," of the par value of $21,826,000, for a purchase price of $18,937,463 at a public sale held on or about August 1, 1921. The contention of appellant is that the sale was illegally made, and that the defendants have converted the bonds and should be liable for their par value.

6.   See 10 Cal. Jur. 556, 557; 10 R. C. L. 407.
7.   See 10 Cal. Jur. 523; 10 R. C. L. 396.

In reaching this conclusion, appellant urges a construction of the law governing the sale of these bonds, which would have prevented their sale at the date named, when the bond market was depressed, and also urges that a charter amendment permitting the sale of the bonds below par was unconstitutional. While the questions raised by these contentions are very interesting and intricate, we are of the opinion that it is unnecessary to determine them upon this appeal, because of our concurrence in the view of the learned trial judge that the complaint shows on its face such a delay in the enforcement of the asserted claim as to amount to laches and bar the right of recovery, if it ever existed.

After alleging that the plaintiff was a citizen, resident, and taxpayer in the city and county of San Francisco, California, at the time of the sale of said bonds and thereafter, until the date of the action, July, 1924, the incorporation of the defendants and the fact that the city and county of San Francisco had refused to join as plaintiff and was made a defendant because of that fact, plaintiff alleged:

"That on the 14th day of January, 1910, the qualified electors of the said city and county of San Francisco, by a vote of more than two-thirds of those voting thereon, voted in the affirmative to issue bonds in amount of forty-five million dollars for the purpose of furnishing money to construct a water supply system for the people of said San Francisco, which said system is commonly known as the 'Hetch Hetchy' system, and thereafter such bonds were executed in proper form, and in denominations of one thousand dollars each, and were designated and known as 'Water Bonds' and each of said bonds was dated July 1st, 1910. The aggregate amount of such bonds of said denomination and value being the said sum of $45,000,000. And upon such execution of said bonds, they were deposited in the treasury of the city and county of San Francisco, to be sold by the Board of Supervisors of said City and County of San Francisco from time to time as money was needed to pay for the work of the construction of said water supply system as such work progressed.

"That during the year 1920, the said city and county of San Francisco determined to construct an adequate part of said water supply system and thereupon it entered into a contract in writing with defendant Construction Com-

pany of North America, said contract being numbered 77c, and in and by said contract the said city and county of San Francisco agreed to pay for all of the labor and material performed and used in the work of the construction of said aqueduct, and it hired and employed said defendant Construction Company of North America, to superintend and manage said work of said construction for it, for a percentage of the total cost of said work which was estimated to be the sum of eight million dollars, and there was thereupon set aside by said city and county of San Francisco, from the water bonds hereinbefore mentioned, bonds in amount of eight million dollars to pay for the said work, and in and by said contract the said Construction Company of North America agreed to purchase sufficient of said bonds at par plus accrued interest at the commencement of each fiscal year while said work was progressing to pay for the work that would be done on said aqueduct during said fiscal year according to the estimate for such work that should be made by the City Engineer of said San Francisco prior to the commencement of such fiscal year, and said Construction Company of North America commenced such work of superintendence during the said year 1920, and was in the employ of the said city and county of San Francisco during all of the times hereinafter stated.

"That on or about the 13th day of May, 1921, M. M. O'Shaughnessy, who was then and there the regularly appointed, qualified and acting City Engineer of the city and county of San Francisco, made an estimate of the amount of said bonds it would be necessary to sell to carry on the work of constructing said Hetch Hetchy water project for the fiscal year 1921–22, which estimate was the sum of $4,000,000, and in said estimate computed that the amount of said bonds that it would be necessary to sell to carry on the work of said aqueduct under said contract 77c, was the sum of $2,750,000, and communicated such estimate to the Board of Supervisors of the said city and county of San Francisco, on or about said date.

"That on the 1st day of July, 1921, the said city and county of San Francisco had in its treasury or in banks for it available for the work of the construction of said water project, including the said aqueduct, all the proceeds of the sale of said water bonds or from income derived from

operating parts of said project the sum of about $6,479,-
677.29, without the sale of any of the bonds so estimated
by said City Engineer as necessary to be sold, and the ex-
penditures for the whole of said water project to-wit, its
construction including the amounts expended under contract
77c for the fiscal year 1921–1922, was the sum of $6,681,-
580.04, which was expended in average monthly amounts
during said fiscal year, and the purchase of said water bonds
in amount $2,750,000 by defendant Construction Company
of North America would have left in the treasury of said
city and county of San Francisco the sum of $2,548,097.20
or thereabouts available for the construction of said water
project on the 1st day of July, 1922.

"That for some two or three years prior to the 1st day
of August, 1921, the value of bonds of every description
throughout the United States was temporarily depreciated
in the selling markets, but it was a matter of common knowl-
edge that such depreciation was but temporary and on or
about said 1st day of August, 1921, bonds of all characters
throughout the United States began to appreciate in value,
and all bonds and the water bonds hereinafter mentioned
were salable at par long prior to the time the city and
county of San Francisco was required to sell any thereof
other than the said amount of $2,750,000 worth under said
contract 77c, and it was a matter of common knowledge on
said 1st day of August, 1921, that said water bonds could
be sold at par prior to the first day of July, 1922, to-wit
the whole of the said water bonds hereinafter mentioned.

"That on the 1st day of August, 1921, the city and county
of San Francisco aforesaid, was the owner of, in possession
of and entitled to the possession of 21,826 of said water
bonds then unsold of the total par value of $21,826,000, said
bonds being of the par value of $1,000 each, which the de-
fendants in the caption hereof named excepting only the
city and county of San Francisco, converted to their own
use in the manner following, to-wit:

"That prior to the 1st day of August, 1921, the Board of
Supervisors of said city and county of San Francisco, ad-
vertised for bids for the purchase of said water bonds,
which bids were to be received and acted upon by said
Board of Supervisors on the said 1st day of August, 1921,
and upon that day the defendant Construction Company

of North America tendered a bid for the purchase of 21,826 water bonds at the average price of about $851.78 for each of said $1,000 bonds, and thereupon the said Board of Supervisors entered into a contract in writing under and by which it agreed to sell the whole of said water bonds to said Construction Company of North America under said contract, it being a single contract, at the said tendered price of $851.78 for each of said bonds, and thereafter the whole of said 21,826 water bonds were delivered to said Construction Company of North America, between the 16th day of August, 1921, and the 17th day of November, 1921, the delivery thereof all being under said contract of sale so made by said supervisors and said board of supervisors and the delivery thereof being made by said city and county of San Francisco at the said Anglo & London Paris National Bank for the said Construction Company of North America, and the whole of said transaction with said city and county of San Francisco was conducted by said the Anglo & London Paris National Bank with said city and county of San Francisco, for said Construction Company of North America, and the said city and county of San Francisco took from the said Anglo & London Paris National Bank and the said Construction Company of North America, United States bonds of the par value of $16,750 for said water bonds and $2,187,468 in money for said water bonds so delivered but neither the whole nor any part of the sum of $2,888,537, the remaining part of the par value of said 21,826 water bonds has been recovered by said city and county of San Francisco, or paid.

"That the bonds aforesaid which the said Construction Company had agreed to buy at par plus accrued interest in the extent of $2,750,000 were included in the 21,826 sold as aforesaid for the price of $851.78 each.

"That by reason of the premises the said city and county of San Francisco and the taxpayers thereof have been damaged in the sum of $21,826,000 less the sum of $18,937,463 so recovered by it, but neither the whole nor any part of the said remaining sum of $2,888,537 has been paid.

"That the market price of the bonds so converted during the greater portion of the year 1922 on the bond market in the said city and county of San Francisco, State of California was in excess of the sum of $1040 for each of said

one thousand dollar bonds, and at about the close of the year 1922, defendant Anglo & London Paris National Bank offered to re-sell some of said bonds to the said city and county of San Francisco at the then market price on said bond market, the said price being in excess of the sum of $1040 for each of said $1000 bonds.

"That the said city and county of San Francisco cannot be induced to commence or prosecute an action to recover the said sum of money herein sought to be recovered as is shown by the following facts:

"It has neglected to commence any action to recover said sum and no action relating to said bond transaction other than this action has ever been commenced.

"That about the month of August, 1922, one James B. McSheehy who was then and there a regularly elected member of the Board of Supervisors of said city and county of San Francisco, and duly qualified and acting, requested said Board of Supervisors to investigate said sale of bonds and all matters in connection therewith, and after some months of delay and great difficulty on his part in getting said Board of Supervisors to act thereon, it finally at about the month of January, 1923, approved said sale, declared it was for the best interests of said San Francisco that it should have been made and that it was a legal and proper sale, and the said Board of Supervisors now and at the time of the commencement of this action was composed of members more than a majority of which acted as above.

"That James Rolph, Junior, is now and for more than ten years last past has been the regularly elected, qualified and acting Mayor of the City and County of San Francisco, and he approved of such sale of said bonds at the time it was made and at the time of the said deliveries thereof, and on or about the 5th day of December, 1922, he publicly stated at a meeting of said Board of Supervisors, that everything that was done about the sale of said bonds was right and that if he had to do it over again he would favor the sale under the same conditions.

"That the said Mayor has at other times and places that plaintiff cannot specify reiterated the same sentiments and neither he nor a majority of the members of said Board of Supervisors have changed their erroneous opinions on said matter but are still in the same frame of mind.

"That George Lull has been the regularly elected, qualified and acting City Attorney of the said City and County of San Francisco, State of California, for more than five years last past, and is now such, and he approved of said bond sale and has taken no action to recover the said sum of money sought to be recovered herein either by suit brought in the name of said City and County or at all, and on the 7th day of March, 1925, plaintiff served a demand on him in this action in the words and figures following to-wit'':

After setting forth the demand, the complaint continues:

"That the said City Attorney signed a receipt for said demand, but failed to signify his intention to comply therewith nor has he complied therewith in any particular.

"That during the month of January, 1923, two voluntary unincorporated associations of persons, each being composed of members residing in said city and county of San Francisco, one being named the 'Taxpayers Association of San Francisco,' and the other being named 'Caravan No. 6, Order of Camels,' requested a Grand Jury of said city and county of San Francisco, then sitting after having been regularly impanelled, to instruct the District Attorney of said city and county of San Francisco, to institute suit to recover the money sought to be recovered in this action, but the said Grand Jury after holding such request for some months refused to so instruct or order said District Attorney to institute such action and no such order has ever been given by any grand jury, and no such action has ever been instituted, the request of such voluntary associations having been made to said grand jury on behalf of said city and county of San Francisco and the taxpayers thereof.

"That the vote of the people of the said city and county of San Francisco, State of California, taken on the 14th day of January, 1910, as hereinbefore mentioned, was taken at a special election held on said day for the purposes of voting on said bond question, and the proposition submitted to the voters at said election was to create a bonded indebtedness to finance said water project, said bonds to bear interest at a rate not exceeding five per cent per annum, and the whole of said bonds were executed and deposited in the treasury of said city and county of San Francisco to be sold

202 Cal.—23

and issued and on their face expressed that the rate of interest to be paid thereon was four and one-half per cent per annum, and thereafter and on the 2nd day of November, 1920, the said Board of Supervisors of the said city and county of San Francisco, State of California, at a general election held on said date submitted a proposed amendment to the charter of said city and county of San Francisco, proposing to amend article XII of said charter by adding thereto a section to be known as section 10b, the said proposed amendment being found in the Statutes of California, for the year 1921, at page 1786, and at said general election 74,652 electors voted in favor of said proposition, and 45,979 of such electors voted against the same, but thereafter and on the 21st day of January, 1921, the legislature of the state of California approved said proposition, and all of said water bonds that were sold and issued prior to the 1st day of August, 1921, were sold at their par value and to bear a rate of interest of four and one-half per cent per annum, over $20,000,000 of such bonds having been so sold and issued prior to the said 1st day of August, 1921.

"That plaintiff did not discover the facts constituting the foregoing cause of action until about the month of May, 1924, and brings this action for the benefit of himself and all taxpayers of said city and county of San Francisco, and all persons legally interested in the recovery of the money sought to be recovered herein, and further alleges that the said Construction Company of North America entered into said contract of August 1, 1921, to purchase the bonds aforesaid, with the full knowledge, consent and approval of the defendant the Anglo & London Paris National Bank, and the last named corporation participated in the conversions hereinbefore complained of from the time of the last delivery of said water bonds and the delivery of said United States bonds by said the Anglo & London Paris National Bank, to said San Francisco, each of said deliveries of such United States bonds being a part of the said sale of bonds herein complained of."

There is nothing to indicate in the foregoing allegations that the sale of the bonds was not in entire good faith on both sides, nor does it appear that the city and county of San Francisco could have disposed of the bonds at a higher price. [1] It is a well-known fact, of which this court

may take judicial notice, that municipal securities during and after the war could not be marketed in large quantities at par unless the usual interest rate thereon was considerably increased. [2] The matters pleaded by plaintiff have all been matters of common knowledge, yet the city authorities and the taxpayers in general have acquiesced in the transaction and the plaintiff himself has acquiesced in it for three years. It is also obvious that the position of the defendants has been altered during this period of delay. If the transaction had been attacked with reasonable promptness and diligence, the bonds might have been returned and the purchase price thereof invested in other bonds which were at that time also greatly depressed in value and which would have appreciated with the rising market as did the bonds which were purchased from the municipality. It appears from the complaint, and the matters judicially noticed, that during the period of delay, which was operating to the disadvantage of the purchaser in the manner before stated, the city and county of San Francisco has been receiving the benefit of the purchase price of the bonds and of the increased value of the United States government bonds taken as a part of such purchase price.

The complaint also reveals additional circumstances which would estop the city and county of San Francisco from asserting a right to rescind this contract at this late date, in its recitals relating to the actions of the mayor and board of supervisors, as well as the grand jury, duly impaneled, all of whom, expressly or impliedly, approved of the purchase and sale and lulled the purchasers into security and thus justified them in proceeding to change their position in reliance upon the validity of the contract.

The delay in this case is particularly inexcusable in view of the speculative elements involved in the transaction. A long period of delay, such as occurred in the instant case, enables a litigant to await changes in the market value of securities, and act only if the change is to his advantage.

[3] It is settled that the plaintiff can assert no better cause of action on behalf of the municipality than that corporation could have asserted upon its own behalf. (*Cathers* v. *Moores*, 78 Neb. 17 [14 L. R. A. (N. S.) 302, 113 N. W. 119] ; *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 93 [35 L. Ed. 943, 12 Sup. Ct. Rep. 142,

see, also, Rose's U. S. Notes].)    And we think that the fore-
going recitals show an inexcusable delay upon the part of
the municipality in asserting any right which it might have
had.    [4]    "If, in the course of an inexcusable delay in
the assertion of a right, changes occur in the subject matter
of the transaction in suit or in the relative positions of the
parties thereto, as a result of which it is impossible to place
the parties *in statu quo,* and the enforcement of the right
would work inequity, relief will be denied because of
laches."    (21 C. J. 231.)    "A marked appreciation or de-
preciation, according to circumstances, in the value of the
property involved, where the right might have been as-
serted before such change, and the granting of relief would
in consequence of the change work inequity, is ordinarily
fatal to plaintiff's case."    (21 C. J. 233.)    "If the prop-
erty involved is of a speculative or fluctuating character,
more than ordinary promptness is required of a claimant."
(21 C. J. 225.)

[5]    To meet the claim of laches raised by the defend-
ants, the plaintiff and appellant asserts that this equitable
doctrine may not be invoked by one who does not come
into court with clean hands, and that the defendants are
precluded by their conduct from raising this defense.    In
reply, we repeat that the complaint contains no allegation
of bad faith nor of fraud, but, on the contrary, alleges facts
from which it appears that both parties to the sale acted
in good faith, in view of the conditions existing at the time,
and, therefore, the principles contended for by appellant
can have no application in a ruling on demurrer.

[6]    The defense of laches was properly raised by the
demurrer filed to the complaint.    (*Marsh* v. *Lott,* 156 Cal.
643 [105 Pac. 968] ; *Superior California Co.* v. *Grossman,*
32 Cal. App. 357 [162 Pac. 1046] ; 21 C. J., pp. 257, 435.)
It is well established that equity will not relieve against
culpable negligence or inexcusable laches.    (*Tynan* v. *Kerns,*
119 Cal. 447 [51 Pac. 693] ; *Blethen* v. *Pacific Mutual L. I.
Co.,* 46 Cal. App. 765 [236 Pac. 360].)    "Nothing can call a
court of chancery into activity but conscience, good faith and
reasonable diligence.    Where these are wanting, the court is
passive and does nothing."    (*Blethen* v. *Pacific Mutual L. I.
Co., supra.*)    [7]    The application of the doctrine of laches
is not dependent upon a delay of sufficient duration to call

into operation the statute of limitations. (*Boone* v. *Templeman,* 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947] ; *Shiels* v. *Nathan,* 12 Cal. App. 604, 619 [108 Pac. 34] ; *Blethen* v. *Pacific Mutual L. I. Co., supra.*)

The judgment appealed from is affirmed.

Curtis, J., concurred.

SHENK, J., Concurring.—I concur in the foregoing opinion, and I place my concurrence in the judgment on the additional ground that in my opinion the sale of the bonds was lawful, as contended by respondents. The appellant places his chief reliance on the case of *Peery* v. *City of Los Angeles,* 187 Cal. 753 [19 A. L. R. 1044, 203 Pac. 992], but there is, I think, a wide distinction between the situation presented in that case and in the case at bar. In that case the city was proceeding under the provisions of the general state law with reference to the issuance of its municipal bonds. That procedure was authorized by the city charter. The bond issue was voted by the electors of the city under a law which required that the bonds should be sold at not less than par and should bear interest not exceeding six per cent per annum, such rate to be specified in the ordinance calling the election. The rate of interest specified in the ordinance was five per cent and was not to be exceeded in the issuance of the bonds. The bonds remained unsold. The legislature in 1921 amended the statute so as to provide that municipalities might sell their bonds theretofore duly authorized and remaining unsold at a rate of interest not exceeding six per cent. The city authorities were proceeding to sell the bonds specifying a six per cent interest rate, when the action was brought by a taxpayer to enjoin the sale as legally unauthorized. It was held that when the bonds were voted upon the express condition that the rate of interest was to be five per cent, a status analogous to a contractual relation was created between the electors of the city and the officials thereof that could not constitutionally be disturbed and that it was incompetent for the legislature to authorize the city officials to sell the bonds to bear a higher rate than five per cent. The sale was declared void, not because there was any constitutional inhibition against the sale generally of municipal bonds bearing six per cent

interest, for there was none, but because the constitution protected one of the parties to the contractual relation, to wit, the electors of the city, against any impairment of that contract right without their consent. There is no provision in our constitution which directly or indirectly prohibits the sale of bonds of the city and county of San Francisco at less than par. In the present case it appears that the electors of San Francisco had, before the bonds in question were sold, duly signified their assent to a change in the rate from four and one-half per cent to five and one-half per cent, and for a sale at less than par. This assent was evidenced in the manner provided by law by an amendment to the city charter approved in 1921. (Stats. 1921, p. 1786.) By that amendment the electors of San Francisco specifically authorized the board of supervisors to sell certain school bonds, not involved in this case, and the water bonds here in question, for less than par and at a rate of interest not in excess of five and one-half per cent. By that charter amendment the principals in the contractual relation, namely, the electors of the city and county of San Francisco, specifically authorized the other parties to the transaction, namely, the officials of the city, who constitute the representatives and agents of the electors, to do what was in fact done pursuant to the authority granted. The issuance and sale of said bonds was peculiarly a municipal affair, which it was entirely competent for the electors of the city and county of San Francisco by charter amendment to control by a proper delegation of power to the board of supervisors. The fact that a two-thirds vote was required to authorize the issuance of the bonds did not militate in the least against the power of the electors to express their assent to a change in the terms of sale by a majority vote on the charter amendment. Section 8 of article XI of the constitution provides not only that the original charter but amendments thereto shall be approved by a majority vote. Under this constitutional provision a majority of the electors of the city constitute the legislative or governing unit in amending the charter and in thus controlling matters of local concern. When the majority acts as constitutionally permitted or authorized, all of the electors and taxpayers of the city and the officers of the city are bound to conform. A majority of the electors imposed the original charter

condition as to the terms of sale, or at least a majority was all that was necessary to impose the condition. Likewise a majority authorized by charter amendment the change in the terms of sale. When, as in this case, a majority acted within constitutional bounds no question of the impairment of contract rights can arise. It is fundamental that contracting parties, lawfully agreeing in the first instance, may thereafter change or modify such agreement by assent lawfully expressed. This assent was legally accomplished in this case. The Peery case and other cases of like import can have no application to the situation here presented.

I find no merit in the contention of the appellant that the respondent construction company, under the facts alleged, was an officer or employee of the city and county. The relation was clearly that of a contractor. Nor does the complaint show bad faith or abuse of discretion on the part of the board of supervisors in ordering the sale of the unsold bonds as a whole. The demurrer was properly sustained and as the appellant expressly declined to amend his complaint, the judgment was lawfully entered.

Waste, C. J., Richards, J., Preston, J., and Seawell, J., concurred.