[Civ. No. 21144. Second Dist., Div. Three. Mar. 27, 1956.]

MARTIN F. SCHAEFER, Appellant, v. SAMUEL
BERINSTEIN et al., Respondents.

Albert Vieri and Walter Monarch for Appellant.

Glen Behymer, Robert E. Rosskopf and Ralph W. Hoffman for Respondents.

VALLÉE, J.—Appeals by plaintiff, suing in a representative capacity as a taxpayer, from two judgments entered in an action based on defendants' alleged fraud on the city of Compton.

Plaintiff appeals from a judgment dismissing the action as against defendants Luberco, Ltd., and The Sterling Company following an order sustaining their demurrers to his second amended complaint without leave to amend. He also appeals from a later judgment dismissing the action in its entirety following an order sustaining general demurrers of defendants John F. Bender,[1] Helen Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank R. Sipe, and Ann Sipe to his third amended and supplemental complaint without leave to amend, granting a motion of defendants Berinstein, Rombotis, Luberco, Ltd., and The Sterling Company to strike that complaint as to them, and the subsequent denial of a motion to vacate said orders and for leave to file a fourth amended and supplemental complaint. The appeals will be considered in the reverse order from that taken by plaintiff.

### The Appeal from the Judgment on the Third Amended Complaint

The third amended complaint, referred to as the complaint, contains eight counts, all predicated on the common ground of fraud. It names as defendants John F. Bender, Helen Bender, Gizella Allen, Roy L. O. Adams, Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Ann Sipe, Frank R. Sipe, Elbert, Ltd., Samuel Berinstein, T. A. Rombotis, Lu-

---

[1] John F. Bender will sometimes be referred to as "Bender."

berco, Ltd., The Sterling Company, and city of Compton. Gizella Allen and Roy L. O. Adams are not parties on the appeal. The others, except City of Compton, demurred and moved to strike. City of Compton filed an answer in which it stated that the city council desired to remain "neutral" in the litigation and take no stand for or against plaintiff.

Plaintiff contends each count states facts sufficient to state a cause of action against all defendants.

There are inferences in the briefs that in determining the sufficiency of the third amended complaint we should look to the allegations of the prior complaints and to the proposed fourth amended complaint. ▌ Where an amended complaint is filed, the original complaint ceases to be the complaint in the action and it is entirely superseded by the amended complaint except for certain limited purposes. (*W. H. Marston Co.* v. *Kochritz,* 80 Cal.App. 352 [251 P. 959]; *Jackson* v. *Pacific Gas & Elec. Co.,* 95 Cal.App.2d 204 [212 P.2d 591]; see *Neal* v. *Bank of America,* 93 Cal.App.2d 678, 681 [209 P.2d 825].) In determining the sufficiency of the third amended complaint in the present case it cannot be aided or defeated by the prior complaints or the proposed fourth complaint.

*Count I.* The first count is for damages against all defendants on the ground of a conspiracy to defraud the city of Compton. The following facts are alleged:

1. Plaintiff is a citizen, resident, and taxpayer of the city of Compton and brings the suit in his representative capacity as a taxpayer. The city is a chartered municipal corporation. Plaintiff made demands on the city council to institute in the name of the city legal action against defendants and the city council refused to authorize or institute such action.

2. Defendant John Bender, an attorney at law, had entered into a series of contracts with the city council, culminating in a contract of January 11, 1944, whereby he was employed as special attorney for the city to clear the title to tax-deeded land situated within the jurisdiction of the city and to sell the land with merchantable title.

3. Defendants Elbert, Ltd., Luberco, Ltd., and The Sterling Company are California corporations engaged in the business of purchasing tax-deeded properties from the city and other municipalities. Defendants Berinstein and Rombotis own a controlling interest in each of the corporations and they are the officers and agents who represented the corporation at all times herein mentioned in their dealings with

the other defendants. Plaintiff refers to Berinstein, Rombotis, and the corporate defendants as the "Masters"; for convenience we shall use this reference. While Bender was acting as special attorney for the city, he was, and is now, the personal attorney for the Masters.

4. Defendants Frank Sipe and Ann Sipe, husband and wife, were employees and agents of Bender, and from time to time during the period from 1944 to the present aided and assisted the Masters and Bender in the wrongful acts alleged.

5. Defendants John Alzola and his wife, Annette Marie Alzola, and Grayce W. Webster, were agents of the other defendants and acted as dummies for them. They enabled Bender to purchase tax-deeded land from the city without disclosing that he was in fact the buyer.

6. In the 1920's and the early 1930's the city council authorized the issuance of bonds under the Improvement Bond Acts of 1911 and 1915. During the early 1930's about one-fourth of the land situated within the city was deeded to the state for taxes. A large part of this land was burdened by the bonds which had become delinquent as to principal and interest. By 1944 the state "was selling tax deeds" to cities for prices ranging from $5.00 to $25 a lot, but the actual fair market value of each lot was between $500 and $1,000 with a merchantable title. Bender, in his official capacity, compiled lists of properties deeded to the state, selected certain parcels, and proceeded to obtain title reports and other information concerning the parcels at the expense of the city of Compton. He then negotiated the purchase of these lands on behalf of the city; and from time to time the city council, relying upon his expert advice, ratified his actions by resolutions and purchased the lands.

7. The count pleads in great detail numerous alleged fraudulent representations and transactions by defendants whereby the Masters, Bender, and Helen Bender acquired from the city, in the names of dummies and nominees, many parcels of tax-deeded land at prices far below their actual value. It alleges the Masters induced Bender to represent and he did represent to the city: that the corporate defendants were the actual owners of bonds which were valid liens against each of the parcels sold to them, when in fact the liens were either invalid or nonexistent; that the sales were conducted at public auctions, when in fact they were conducted under private sales procedure and did not comply

with the requirements of such; that it was in the best interest of the city to sell to the owners of the equity of redemption and to the owners of the bonds to the exclusion of all other bidders; that he (Bender) had investigated the ownership of bond liens on the properties.

8. Bender recommended to the city that certain lots in which the Masters were interested be sold without a merchantable title and for one-fifth of their actual value. He concealed the fact that the land could have been sold with a merchantable title without large expense and would have given the city a very large profit. For the purpose of concealing the fraud, he enticed other officers and employees of the city to purchase tax-deeded land from the city. In order to preserve the fantasy of the value of the alleged bonds claimed to be owned by defendants, Bender, until December 3, 1951, caused the city to pay principal and interest and penalties on bonds which were presumed extinguished on or after January 1, 1947, to corporate defendants and to himself. For the purpose of concealing the fraud he failed to keep any adequate records of his transactions and failed to make written reports of a comprehensive nature.

9. The representations were false, were known by defendants to be false, were made with the intention of defrauding the city, and were relied on by the city to its damage. They were made by Bender until the time of filing the complaint, and the overt acts of fraudulent concealment were carried out by defendants at frequent intervals from 1948 to the date of filing this suit.

10. Pursuant to his contract with the city, Bender received fees and costs from the city in connection with the fraudulent transactions. He also was paid fees by purchasers for clearing the title to property after they had bought the property from the city and for other alleged services.

11. The city had no information which would put it on notice of the existence of the wrongful course of conduct of defendants in the conspiracy until April 1953. The fraud was revealed to the city on April 14, 1953, by James G. Butler, who later became city attorney, when he presented to the city council copies of certain recorded deeds and demanded an investigation. On April 21, 1953, Butler presented to the city council evidence indicating that Bender at all times had acted as the agent of Elbert, Ltd., in dealing with the city while he was purporting to act as the attorney for the city.

12. The city council refused to enforce certain provisions of the city charter which enjoin it to declare the transactions involved void. The charter provisions are set forth *in haec verba*.[2]

13. The city council refused to authorize the city attorney to bring an action for redress in connection with the matters covered by the complaint, and the refusal was continued after repeated requests by the city attorney's office as well as after repeated presentations of evidence to the council in affidavits.

14. Plaintiff first became informed of the alleged conspiracy by reading newspaper accounts of the statements of Butler to the city council on and after April 14, 1953. On April 28, 1953, plaintiff demanded at a regular meeting of the city council that these suspicious circumstances be investigated and that a lawsuit be instituted for declaratory relief, for damages, for an accounting, and for other appropriate relief against defendants. The city council refused to act. On March 9, 1954, the city council reaffirmed its refusal to investigate the said matters and to authorize the prosecution of a lawsuit in the name of the city.

15. As a proximate result of the wrongful acts of defendants and each of them the city has been damaged in the sum of not less than $1,000,000, but the exact amount is capable of being ascertained only by an accounting.

The prayer is for judgment in favor of the city for $1,000,000 against all defendants other than Helen Bender.

---

[2]From 1925 until March 11, 1948, section 6, article 26, of the city charter provided: ''No member of the Council, or of any Board, and no officer or employe of the City shall be or become directly or indirectly interested in any contract, work or business, or in the sale of any article, the expense price or consideration of which is payable from the City Treasury, nor shall either or any of them receive any gratuity or advantage from any contractor or person furnishing labor or material for the same, and any contract with the City, in which any such officer or employe is or becomes interested, shall be declared void by the Council.'' (Stats. 1925, ch. 20, pp. 1212, 1245.)

Since March 11, 1948, section 1202, article 12, of the charter provides: ''No member of the City Council, officer or employee of the City, shall be financially interested, directly or indirectly, in any contract, sale or transaction to which the City is a party. . . . Any such contract or transaction in which there shall be such an interest shall become void at the election of the City, when so declared by resolution of the City Council. . . . If any member of the City Council, officer or employee of the City . . . shall so vote or participate or be financially interested as aforesaid, upon conviction thereof, he shall forfeit his office.'' (Stats. 1948, ch. 11, pp. 236, 259.)

Section 601, article 6, of the 1948 charter reads: ''It shall be the duty of the City Council to enforce the provisions of the Charter.'' (Stats. 1948, ch. 11, pp. 236, 242.)

General and special demurrers were filed by all defendants to the complaint and to each count. Berinstein, Rombotis, Luberco, Ltd., and The Sterling Company filed motions to strike the complaint. The motions were granted. The general demurrers of the other defendants were sustained without leave to amend.

It seems necessary to repeat the rules which should govern a trial court in the consideration of a demurrer on the ground a pleading does not state facts sufficient to constitute a cause of action and which govern a reviewing court in considering an appeal from a judgment entered on the sustaining of a demurrer on that ground. ■ On appeal from a judgment sustaining a demurrer to a complaint the allegations of the complaint must be regarded as true. ■ It must be assumed that plaintiff can prove all the facts as alleged. (*Wirin* v. *Horrall*, 85 Cal.App.2d 497, 500 [193 P.2d 470].) ''The court must, in every stage of an action, disregard any defect in the pleadings which does not affect the substantial rights of the parties. (Code Civ. Proc., § 475.) ■ 'Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears.' (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 42 [172 P.2d 867].) ■ All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. (*Tristam* v. *Marques*, 117 Cal.App. 393, 397 [3 P.2d 947].) ■ 'In determining whether or not the complaint is sufficient as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' (*Matteson* v. *Wagoner*, 147 Cal. 739, 742 [82 P. 436].) ■ In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties. (*Buxbom* v. *Smith*, 23 Cal.2d 535, 542 [145 P.2d 305]; *Gerritt* v. *Fullerton Union High School Dist.*, 24 Cal.App.2d 482, 486 [75 P.2d 627].) ■ 'While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code

system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms.' (*Buxbom* v. *Smith*, 23 Cal.2d 535, 542 [145 P.2d 305].)'' (*Hardy* v. *San Fernando Valley C. of C.*, 99 Cal.App.2d 572, 577 [222 P.2d 314].)

Defendants first say that plaintiff does not have the legal capacity to maintain the action and that he is not the real party in interest.

Generally, a municipality, through its governing body, has control of the property and general supervision over the ordinary business of the corporation. Where the thing in question is within the discretion of the governing body, neither the state nor any private citizen can question the action or nonaction of such body by any judicial proceeding.

A citizen and taxpayer cannot maintain an action to protect the interests of the municipality when there is no immediate duty enjoined upon the governing body or the municipality to bring a similar action, but they have discretion to refuse to bring it. (*Dunn* v. *Long Beach Land & Water Co.*, 114 Cal. 605, 609 [46 P. 607].)

In this state it is thoroughly established that a taxpayer, under certain circumstances, has the right to sue in a representative capacity. (*Nickerson* v. *County of San Bernardino*, 179 Cal. 518 [177 P. 465]; *McConoughey* v. *City of San Diego*, 128 Cal. 366 [60 P. 925]; *Warfield* v. *Anglo etc. Nat. Bank*, 202 Cal. 345 [260 P. 881]; *Mock* v. *City of Santa Rosa*, 126 Cal. 330 [58 P. 826]; *Mines* v. *Del Valle*, 201 Cal. 273 [257 P. 530]; *Crowe* v. *Boyle*, 184 Cal. 117 [193 P. 111].) A taxpayer may sue in cases involving fraud, collusion, ultra vires, or a failure on the part of a governmental body to perform a duty specifically enjoined. (*Pratt* v. *Security Trust & Sav. Bank*, 15 Cal.App.2d 630, 636 [59 P.2d 862].)

The charter provisions of the city of Compton are in accord with the established policy of this state with respect to the subject to which they relate. (See Gov. Code, §§ 1090-1092; Civ. Code, § 1667.) It is the general policy of the state that public officers shall not be interested in any contract made in their official capacity in which they have a personal or financial interest. (*Stockton P. & S. Co.* v. *Wheeler*, 68 Cal.App. 592, 597 [229 P. 1020].) That policy affords aid in construing charter provisions on the same subject. (*Id.*) Officers of a municipal corporation,

like those of private corporations, are agents of the corporate body and may not use their official position for their own benefit, or for the benefit of anyone except the municipality itself. They may not represent the corporation in any contract or transaction in which they are personally interested in obtaining an advantage at the expense of the corporation. (*People* v. *Sullivan*, 113 Cal.App.2d 510, 523 [248 P.2d 520]; 18 Cal.Jur. 978, § 253.) Such contracts are held void as against public policy, both on the ground that the interest of the officer interferes with the unbiased discharge of his duty to the public and also that a contract in violation of an express statutory provision is void. (*City of Oakland* v. *California Const. Co.*, 15 Cal.2d 573, 576 [104 P.2d 30].) The basic reason for the enactment of laws and charter provisions of this character is concisely stated in *Stockton P. & S. Co.* v. *Wheeler*, 68 Cal.App. 592 [229 P. 1020], as follows (p. 601):

"The principle upon which public officers are denied the right to make contracts in their official capacity with themselves or to be or become interested in contracts thus made is evolved from the self-evident truth, as trite and impregnable as the law of gravitation, that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed. . . . The personal interest of an officer in a contract made by him in his official capacity may be indirect only, still such interest would be sufficient to taint the contract with illegality. If his interest in the contract is such as would tend in any degree to influence him in making the contract, then the instrument is void because contrary to public policy, the policy of the law being that a public officer in the discharge of his duties as such should be absolutely free from any influence other than that which may directly grow out of the obligations that he owes to the public at large."

 The public officer's interest need not be a financial one; nor is it necessary to show actual fraud, dishonesty, or loss to invalidate the transaction. The purpose of the statute is to remove all indirect influence of an interested officer as well as to discourage deliberate dishonesty. (*Miller* v. *City of Martinez*, 28 Cal.App.2d 364, 369 [82 P.2d 519].) It is not the character of the contract itself, but the manner in which it is created, that renders it violative of sound public policy.

Defendants Bender, Helen Bender, Webster, John and Marie Alzola, and Frank and Ann Sipe argue that the charter provision as it existed prior to 1948, when the alleged purchases were made, did not prohibit the purchase of city property by an officer or city employee but only prohibited an officer or employee from being interested in "any contract, work or business or in the sale of any article, the expense, price or consideration of which is payable from the City Treasury." Their contention is that the purchase price of any property from the city would not be paid from the city treasury and such prohibition would reach only a sale *to* the city and not a sale *by* the city. The charter provision cannot be given such a narrow construction. The distinction is unsound since the evil is involved in both transactions. ▆ Statutes prohibiting personal interests of public officers in public contracts are strictly enforced. (*Moody* v. *Shuffleton*, 203 Cal. 100, 104 [262 P. 1095].) In *Miller* v. *City of Martinez*, 28 Cal.App.2d 364 [82 P.2d 519], the contention was that "the statute permits only withholding, not recovery, of payment" to an officer for supplies when he is interested in the transaction. It was held that the statute was merely a cumulative remedy which in no way restricted the recovery of money paid on such claims in view of the express language of the section making such transactions void and the broad principle of public policy which recognizes no equities or estoppels on the part of a participant. It is sufficient to say that even if the city of Compton had not adopted a provision relating to "conflicts of interests," Bender's conduct would be prohibited by section 1090 of the Government Code.

Section 1090 of the Government Code states that "city officers shall not be interested in any contract made by them in their official capacity." ▆ A person merely in an advisory position to a city is affected by the conflicts of interest rule. (See *People* v. *Sullivan*, 113 Cal.App.2d 510 [248 P.2d 520].) Bender was employed by the city of Compton as a special city attorney for the purpose of rehabilitating tax-deeded and special assessment frozen properties situated within the city. He was an officer and agent of the city and as such was in a position to advise the city council as to what action should be taken relative to the property involved. He could not buy the property in his own name and he could not do so through a dummy. The contracts to purchase from the city and the ultimate sales

were contrary to public policy and are void (*Edwards* v. *Estell*, 48 Cal. 194; 12 Cal.Jur.2d 290, § 88.)

Defendants appear to argue that no facts are alleged showing a demand on the city council that legal action be filed. The point has no merit. It is expressly alleged that on April 28, 1953, plaintiff demanded of the city council "that a lawsuit be instituted for declaratory relief, for damages, for an accounting, and for other appropriate relief against the defendants," and sufficient ultimate facts are alleged showing the facts averred in the complaint were brought to the attention of the council and that they were sufficient to warrant action by it.[3] The city is not contending the notice and demand were insufficient. In fact, in its answer it says the city council desires to remain "neutral." Plaintiff clearly alleges that he made demand upon the city council; and it,

---

[3]Paragraph LVII of Count I reads: "That on or about January 15, 1953, James G. Butler, an attorney and a resident of the City of Compton, sought information concerning the individual and separate personal wealth of the defendants Adams and Bender. That in connection therewith he hired an investigator at his personal expense, which investigation involved in excess of a hundred hours, and said investigation disclosed that Adams [the then city treasurer] and Bender owned real estate as tenants in common. That properties originally sold by the City to Alzola and Webster, as described above, had later been transferred to the defendants Bender and Adams as co-tenants. This information lead to the suspicion that Grayce W. Webster and John M. Alzola at no time had been bona fide purchasers. That on April 14, 1953, James G. Butler presented to the City Council copies of certain recorded deeds which were the basis of this suspicion and demanded an investigation. From the failure of Adams to give any explanation, the inference followed that the suspicions were true, and thereafter Butler presented to the City Council, on or about April 21, 1953, evidence indicating that Bender at all times had acted as the agent of Elbert, Ltd. in dealing with the City, while he was purporting to act as the attorney for the City."

Paragraph LVIII reads: "That on April 28, 1953, the plaintiff demanded at the regular meeting of the City Council that these suspicious circumstances be investigated and that a lawsuit be instituted for declaratory relief, for damages, for an accounting, and for other appropriate relief against the defendants then known to the plaintiff. That the City Council refused to act at that date, and that on March 9, 1954, the City Council reaffirmed again its refusal to investigate the said matters and to authorize the prosecution of a lawsuit in the name of the City, and that the motion in which said reaffirmation of the stand of the City Council was preceeded [sic] by substantially the following statement: That the City Council desired to remain 'neutral' in the dispute between the City Attorney and Special City Attorney Bender; that the matters in dispute were so complex both as to law and the facts as to be incapable of adequate analysis by the members of the City Council, a lay body, and that the matter was already in the hands of the courts by reason of the taxpayer's suit, and that the matter should, therefore, be decided by the said courts since the courts were better equipped to deal with the factual and legal aspects of the charges made by the taxpayer."

with sufficient knowledge of the alleged facts, refused to institute legal action. The charters of 1925 and of 1948 provide that the city council shall have the power to declare void a contract in which an officer or employee of the city is interested. Section 601 of the 1948 charter enjoins on the city council the duty of enforcing the charter. ■ The facts show a failure of the city council to perform a specifically enjoined duty. A cause of action in the city is alleged. The council failed to declare the transactions involved void; plaintiff made a sufficient demand on the council to institute action; it refused; therefore, plaintiff as a taxpayer has the capacity to maintain the action. (*Miller* v. *McKinnon*, 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570]; *Miller* v. *City of Martinez*, 28 Cal.App.2d 364 [82 P.2d 519]; *Osburn* v. *Stone*, 170 Cal. 480 [150 P. 367].)

Defendants next say the facts alleged are not sufficient to constitute a cause of action. ■ Enough facts are alleged to show a conspiracy to defraud the city of Compton. ■ The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting from an act or acts done in furtherance of the common design. ■ Where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action. ■ Each participant in the wrongful act is responsible as a joint tortfeasor for all damages ensuing from the wrong, regardless of whether he was a direct actor and regardless of the degree of his activity. (*California Auto Court Assn., Inc.* v. *Cohn*, 98 Cal.App.2d 145, 149 [219 P.2d 511].) ■ A plaintiff is entitled to a joint recovery of damages against such defendants as he can show have united or cooperated in inflicting a wrong upon him. ■ The act of one during a conspiracy is the act of all if done in furtherance thereof, and thus a defendant may be held liable who in fact committed no overt act and gained no benefit therefrom. (*Mox, Inc.* v. *Woods*, 202 Cal. 675, 678 [262 P. 302].) ■ A conspiracy may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. (*Globe Dairy Lunch* v. *Joint etc. Culinary Workers*, 117 Cal.App.2d 190, 193 [225 P.2d 94]; *California Auto Court Assn.* v. *Cohn*, 98 Cal. App.2d 145, 149 [219 P.2d 511]; *Anderson* v. *Thacher*, 76 Cal.App.2d 50, 72 [172 P.2d 533].) The facts alleged show

that defendants Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank R. Sipe, and Ann Sipe united and cooperated with each other to defraud the city; they acted in concert in doing so. (See *Clark* v. *Lesher,* 106 Cal.App.2d 403, 409 [235 P.2d 71].)

As we have mentioned, the gravamen of the action is fraud. A cause of action based on fraud must aver a fraudulent representation; that the representation was false; that it was known by the defendant to be false; that it was made with intent to deceive the plaintiff; that the plaintiff relied on the representation; and that the plaintiff was damaged. (*Compas* v. *Escondido Mutual Water Co.,* 86 Cal.App.2d 407, 411 [194 P.2d 785]; 23 Cal.Jur.2d 164, § 66.) The allegations as to acquisition of property from the city by Bender, his associates, and clients present a prima facie case of fraud. (Civ. Code, §§ 2219, 2231, 2233, 2234, 2235.) The complaint is sufficient to meet the requirements of a pleading based on fraud.

The next contention is that the action is barred by the statute of limitations. It is argued that none of the sales by the city occurred later than June 29, 1948 and that plaintiff's first complaint was not filed until April 29, 1953, more than three years after the last of the alleged sales. [28] Plaintiff relies on subdivison 4 of section 338 of the Code of Civil Procedure which provides that in an action for relief on the ground of fraud the cause of action is not to be deemed to have accrued until discovery, by the aggrieved party, of the facts constituting the fraud. To come within this exception, a plaintiff must allege when the fraud was discovered, the circumstances of the discovery, what the discovery was, and why it was not discovered sooner. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 437-438 [159 P.2d 958]; *Tognazzini* v. *Tognazzini,* 125 Cal.App.2d 679, 687 [271 P.2d 77]; *Mortimer* v. *Loynes,* 74 Cal.App.2d 160, 171 [168 P.2d 141].) Negligence on the part of a plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. (*Seeger* v. *Odell,* 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291].) The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar recovery. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 437 [159 P.2d 958]; *Anderson* v. *Thacher,* 76 Cal.App.2d 50, 70 [172 P.2d 533]; *Stoll* v. *Selander,* 81 Cal.App.2d 286, 292 [183 P.2d 935].) The statute commences to run only after one

has notice of circumstances sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. ██ ''Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.'' (*Tarke* v. *Bingham,* 123 Cal. 163, 166 [55 P. 759].)

██ In many cases it has been said that means of knowledge are equivalent to knowledge. This is true only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious. (*Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809].) ██ Where there is a duty to investigate, the plaintiff may be charged with knowledge of the facts which would have been disclosed by an investigation; but where there is no prior duty to investigate, the statute does not run until he has notice or knowledge of facts sufficient to put a reasonable man on inquiry. ██ ''In the absence of a duty to make inquiry, as pointed out above, the statute does not run merely because the means of discovery were available, and plaintiff is not compelled to disprove that such means existed. He need only establish facts sufficient to show that he made an actual discovery of hitherto unknown information within three years before the filing of the action. . . . The requirement that plaintiff show what information he received or what suspicious facts came to his notice is imposed in order that the court may determine whether or not the discovery was made within the time alleged, that is, whether plaintiff actually learned something he did not know before.'' (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 442 [159 P.2d 958].)

We cannot hold, as a matter of law, that any of the circumstances known to the city should have put a reasonably prudent person upon inquiry. The complaint discloses facts which may have tended to discourage the making of any investigation. Bender's representations were of such a nature as to lull the city into a sense of security or state of inaction—an important factor to be considered in determining whether the city was negligent in failing to in-

vestigate. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 439 [159 P.2d 958].)

In cases involving confidential relationships, the rule requiring allegations stating the circumstances which are relied upon by the plaintiff as excusing prior discovery of the fraud is relaxed. (*Bainbridge* v. *Stoner*, 16 Cal.2d 423, 430 [106 P.2d 423].) In *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958], the court points out that it is recognized that in cases involving a fiduciary relationship "facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required." (See also *Rutherford* v. *Rideout Bank*, 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383] ; *Lee* v. *Hensley*, 103 Cal.App.2d 697, 704 [230 P.2d 159].) Bender was in a confidential relationship with the city.

Defendants argue that the status of the liens and the tax-deeded properties were matters of public record and that the city and plaintiff were charged with constructive notice.

Where fraud is involved public records are not constructive notice of the true facts to the defrauded party.

The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations but to bona fide purchasers for value. (*Seeger* v. *Odell*, 18 Cal.2d 409, 415 [115 P.2d 977, 136 A.L.R. 1291] ; *Mills* v. *Hellinger*, 100 Cal.App.2d 482, 487 [224 P.2d 34] ; *Barder* v. *McClung*, 93 Cal.App.2d 692, 697 [209 P.2d 808] ; *Anderson* v. *Thacher*, 76 Cal.App.2d 50, 70 [172 P.2d 533] ; *Brown* v. *Oxtoby*, 45 Cal.App.2d 702, 706 [114 P.2d 622].) Plaintiff alleges Bender caused the records of the city to be kept improperly and inadequately and that he at all times refused to allow other officials to inspect his files and his records. Bender at no time rendered an accounting of his activities, except orally, and until the inception of the present litigation it was only done at secret and executive sessions. The city was not required to employ others to investigate matters of a technical nature which Bender, as an expert, was hired to do. Bender had full knowledge of the status of the liens and tax-deeded properties; the city had none. Plaintiff may show the city relied on representations of Bender as to matters which it did not investigate.

When facts are susceptible to opposing inferences, whether a party had notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned

such fact, are questions of fact. (*Tognazzini* v. *Tognazzini*, 125 Cal.App.2d 679, 687 [271 P.2d 77].) None of the facts alleged compel such conclusions as a matter of law. Under the circumstances alleged, it is difficult to see how the city could have been expected to make or cause to be made any investigation into the particular transactions; or how it can be charged with knowledge, or notice of facts, or circumstances which, if reasonably pursued, would have led to the discovery of the alleged fraud.

The complaint alleges that the city had no prior knowledge that any fraud had been perpetrated. The pleading is sufficient to support the conclusion that neither the city nor plaintiff learned anything to arouse their suspicions during the period between the completion of the transactions in 1948 and the alleged discovery of the fraud in 1953.

Defendants argue that plaintiff has not pleaded facts relating to the claimed actual discovery of the fraud in 1953. The facts hereinbefore discussed clearly show the circumstances under which and when the alleged fraud of defendants was discovered. Within a month after plaintiff was first put on notice of the alleged fraud and had made demand on the city council to institute action, he commenced this action. Plaintiff has brought himself and the city within subdivision 4 of section 338 of the Code of Civil Procedure, and the action is not barred by the statute of limitations.

*Counts II through VIII.* These counts incorporate all of the allegations of the first count. Count II is for an accounting for unjust enrichment against all defendants. It alleges that Helen Bender was the wife of John F. Bender at the time properties of the city were conveyed to Bender and his wife. It is predicated on the alleged facts that they made large profits which they are not lawfully entitled to retain by reason of the fraudulent acts. Count III is to impress a trust against Webster and Bender for the alleged fraudulent conveyance of 8 lots by the city to Webster as a dummy of Bender which lots were later conveyed to Bender by Webster. Counts IV and V are against Bender and John M. Alzola and Count VI is against Bender and Elbert, Ltd. These counts set forth separate specific transactions in which Alzola and Elbert, Ltd., acted as agents and dummies for Bender in purchasing at least 17 lots from the city for nominal considerations which they each later conveyed to Bender. With respect to these counts it is prayed

that each defendant be required to account for the money improperly and illegally obtained, be declared a trustee as to the properties, and be required to reconvey the same; or if the properties have been conveyed, for judgment against them for the proceeds thereof. Count VII is against Bender only. It incorporates the specific transactions stated in counts III, IV, V, and VI, whereby Webster, Alzola, and Elbert, Ltd., acted as his agents and dummies in purchasing the designated lots from the city. It alleges that in connection with these transactions, and others, Bender received a fee of 25 per cent from the city and was reimbursed for costs out of the city treasury. The prayer is for judgment for $1,220 and such other and further sums as an accounting by Bender may show to be due the city. Count VIII is for declaratory relief against all defendants. Plaintiff seeks a declaration of the rights of Bender and the city to the contract of January 11, 1944, and of the validity of certain sales approved by 30 resolutions of the city council whereby the city sold approximately 200 lots to the corporate defendants, Webster, and Alzola. Each of these counts states facts sufficient to constitute a cause of action.

The third amended complaint is far from being a model pleading. While there are some uncertainties, they appear to be matters which lie within the knowledge of defendants. A demurrer does not lie to such matters. (*Turner v. Milstein*, 103 Cal.App.2d 651, 658 [230 P.2d 25].) The minute order sustaining the demurrers of defendants John F. Bender, Helen E. Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank R. Sipe, and Ann Sipe to the third amended complaint without leave to amend also grants motions of those defendants to strike various parts of that complaint. The grounds of the motions were largely that the parts sought to be stricken are conclusions of law. The order granting the motions is reviewable on appeal from the judgment. No purpose would be served in reviewing the motions in detail. To do so would make this opinion interminable. We have examined them, and are satisfied they were not well taken and that it was error to grant them. Accordingly, our summary of the third amended complaint is as it is pleaded.

Applying the pertinent rules we are of the opinion that a triable cause of action is pleaded in Count I as to defendants John F. Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank Sipe, and Ann Sipe; in

Count II as to said defendants and Helen Bender; in Count III as to defendants John F. Bender and Grayce W. Webster; in Counts IV and V as to defendants John F. Bender and John M. Alzola; in Count VI as to defendants John F. Bender and Elbert, Ltd.; in Count VII as to defendant John F. Bender; and in Count VIII as to defendants John F. Bender, Helen Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank Sipe, and Ann Sipe.

### The Case Against Berinstein and Rombotis

The third amended complaint designates as defendants all of those who were so named in the original and first two amended complaints and joins two new defendants, Berinstein and Rombotis. These two defendants were not sued under fictitious names. No order of court was obtained permitting their joinder. Berinstein and Rombotis moved to strike the complaint from the file and to strike therefrom all references to them as parties defendant on the ground they were not proper parties defendant as no leave of court had been granted permitting their joinder. The motions were granted. No claim is made that the motions were not well grounded. Leave of court is required under section 473 of the Code of Civil Procedure to add new parties defendant. (*Thomasian* v. *Superior Court*, 122 Cal.App.2d 322, 335 [265 P.2d 165]; see *Worley* v. *Spreckels Bros. Coml. Co.*, 163 Cal. 60, 73 [124 P. 697]; *Schaad* v. *Barceloux*, 42 Cal.App. 337 [183 P. 716]; *Harvey* v. *Meigs*, 17 Cal.App. 353 [119 P. 941].) There was no error in granting the motion of Berinstein and Rombotis to strike the third amended and supplemental complaint from the files and all references to them therefrom.

### The Case Against Luberco, Ltd., and The Sterling Company.

The demurrers of these defendants to the second amended complaint were sustained without leave to amend and judgment in their favor was entered. Thereafter plaintiff, without leave of court, named them as defendants in the third amended complaint. On motion all references to them in that complaint were stricken. On the appeal from the judgment on the third amended complaint plaintiff concedes these parties should not have been named defendants in that complaint without leave of court. Plaintiff also appeals from the judgment entered on the sustaining of the demurrers of Luberco, Ltd., and The Sterling Company to the second

amended complaint without leave to amend. On that appeal he contends that certain counts of the second amended complaint state facts sufficient to constitute a cause of action against those defendants.

The second amended complaint contained 30 counts. Apparently in 8 of the 30 counts an attempt was made to state a cause of action against either Luberco, Ltd., or The Sterling Company, or both. No purpose would be served in reviewing these counts in detail. No facts are alleged of any wrongdoing on the part of either of these defendants. No facts are alleged to the effect that either of them conspired with any other defendant to defraud the city of Compton, nor that either of them profited in any way from any dealings it may have had with the city.

Luberco, Ltd., and The Sterling Company were not named as defendants in the original complaint. They were first named in the first amended complaint. Their demurrers to that complaint were sustained with leave to amend. No facts sufficient to state a cause of action against either of them were alleged in the next pleading—the second amended complaint. There is no showing that the court abused its discretion in sustaining the demurrers of Luberco, Ltd., and The Sterling Company to the second amended complaint without leave to amend.

The judgments as to defendants Luberco, Ltd., and The Sterling Company and the judgment as to defendants Berinstein and Rombotis are affirmed. The judgment as to defendant Helen Bender with respect to Counts I, and III to VII, both inclusive, is affirmed, and with respect to Counts II and VIII it is reversed. The judgment as to defendants John F. Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank R. Sipe, and Ann Sipe with respect to Counts I, II, and VIII is reversed. The judgment as to defendants John F. Bender and Grayce W. Webster with respect to Count III is reversed; as to all other defendants it is affirmed. The judgment as to defendants John F. Bender and John M. Alzola with respect to Counts IV and V is reversed; as to all other defendants it is affirmed. The judgment as to defendants John F. Bender and Elbert, Ltd., with respect to Count VI is reversed; as to all other defendants it is affirmed. The judgment as to defendant John F. Bender with respect to Count VII is reversed; as to all other defendants it is affirmed. In each instance that a judgment is reversed it is with directions to overrule the

demurrer. Plaintiff shall bear the cost of the clerk's transcript on the appeal of Luberco, Ltd., and The Sterling Company from the judgment on the order sustaining their demurrers to the second amended complaint. Plaintiff shall bear one-tenth of the costs on appeal from the judgment on the third amended complaint; defendants John F. Bender, Elbert, Ltd., Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank R. Sipe, and Ann Sipe shall bear nine-tenth thereof.

Shinn, P. J., and Wood (Parker), J., concurred.

The petitions of respondents John F. Bender, Helen E. Bender, Grayce W. Webster, John M. Alzola, Annette Marie Alzola, Frank R. Sipe, Ann Sipe and Elbert, Ltd., for a hearing by the Supreme Court were denied May 23, 1956.